

November 19, 2020

RECEIVED

NOV 19 2020

ALEXANDRIA DIVISION
US BANKRUPTCY COURT

**VIA FED-EX**

Thomas P. Gorman
300 North Washing Street, #400
Alexandria, VA 22314

Clerk of Court
United States Bankruptcy Court
200 South Washington Street
Alexandria, VA 22314

RE:   Notice of Claim No.:   663016
      DEBTOR:   Christian E. Dorsey, Case #19-13402-BFK

Mr. Gorman and To Whom It May Concern:
Fidelity National Title Insurance Company (the "Company") has a claim for recovery against Christian E.
Dorsey (the "Debtor") with respect to the Company's claim number 663016. The Company filed a Proof
of Claim in the Debtor's pending Bankruptcy, and it appears that the debt of the Company is trying to be
avoided pursuant to that certain Motion to Dismiss with Prejudice, enclosed.

At all times relevant hereto, the Debtor did have a second trust mortgage obligation.

Specifically, the Debtor and Rachael J. Feldman acquired 1009 S. Columbus Street, Arlington, VA (the
"Property") on or about August 14, 2008. On the same day, they executed and delivered a deed of trust
in favor of PNC Bank, N.A. (PNC) to secure repayment of a loan in the amount of $417,000 (the "First
Deed of Trust"). Also on the same day, they executed and delivered a deed of trust securing a credit line
in the amount of $133,000 (the "Second Deed of Trust"). The First and Second Deeds of Trust were
recorded on August 15, 2008. On or about November 29, 2011, the Debtor and Rachel J. Feldman
obtained another loan from Wells Fargo Bank, N.A. ("Wells Fargo"). To secure repayment of that loan,
they executed and delivered a deed of trust in favor of Wells Fargo in the amount of $408,700 (the
"Wells Fargo Deed of Trust"). In connection with the Wells Fargo Deed of Trust transaction, the First
Deed of Trust was satisfied, and the Second Deed of Trust was intended to be subordinated to the
interest of the Wells Fargo Deed of Trust. In connection therewith, the Company issued a Loan Policy of
Title Insurance to Wells Fargo, insuring that the Wells Fargo Deed of Trust had first lien position to the
Property. Thereafter, it was discovered that the Second Deed of Trust was not properly subordinated to
the interest of the Wells Fargo Deed of Trust.

To satisfy its obligations under its Loan Policy, the Company tendered $116,559.93 to satisfy the Second
Deed of Trust. It is only because of the Company's payment that the "second trust mortgage obligation"
was "forgiven and released."

Because the Company satisfied a debt obligation of the Debtor, the Debtor has been unjustly enriched.

At the time of the Company's payment, the Debtor was already in Bankruptcy. Accordingly, the Company confirmed that PNC had not yet filed a Proof of Claim, and filed its Proof of Claim to secure repayment of the second mortgage obligation.

For the reasons stated herein, the Motion to Dismiss should be denied.

To-date, the Trustee has remitted only $200 to the Company.

Nothing contained herein is intended as, nor should be deemed to constitute, a waiver or relinquishment of any of the Company's rights or remedies, whether legal or equitable, all of which are hereby expressly reserved.

Thank you for your anticipated cooperation in this matter.
Sincerely,

Staci Stupka Ulrich
Senior Recoupment Counsel, VP | Team Lead
Fidelity National Title Group
2533 North 117th Ave.
Omaha, NE 68164
staci.ulrich@fnf.com
Direct: (402)498-7113

Enclosures

**Fill in this information to identify the case:**

Debtor 1    Christian E. Dorsey

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Eastern_____ District of __Virginia__▼

Case number   19-13402-BFK

## Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1:    Identify the Claim

| | |
|---|---|
| 1. Who is the current creditor? | **Fidelity National Title Insurance Company**<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor |
| 2. Has this claim been acquired from someone else? | ☐ No<br>☑ Yes.   From whom? **PNC Bank, N.A.** |

3. Where should notices and payments to the creditor be sent?

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Fidelity National Title Ins. Co. c/o Staci Ulrich
Name

2533 N. 117th Ave.
Number      Street

Omaha              NE          68164
City                    State        ZIP Code

Contact phone  4024987113

Contact email  staci.ulrich@fnf.com

Where should payments to the creditor be sent? (if different)

Name

Number      Street

City                    State        ZIP Code

Contact phone

Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

| | |
|---|---|
| 4. Does this claim amend one already filed? | ☑ No<br>☐ Yes.   Claim number on court claims registry (if known) _____            Filed on _____<br>                                                            MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes.   Who made the earlier filing? _____ |

Official Form 410                                        Proof of Claim                                        page 1

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**

$_____ 116,559.93 . Does this amount include interest or other charges?

☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money Loaned and Assigned to Creditor

**9. Is all or part of the claim secured?**

☐ No
☑ Yes. The claim is secured by a lien on property.

Nature of property:

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe: _____

Basis for perfection: Recorded Deed of Trust

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property: $_____ 835,500.00
Amount of the claim that is secured: $_____ 116,559.93

Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $_____ 200.00

Annual Interest Rate (when case was filed) 5.50 %
☐ Fixed
☑ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. Amount necessary to cure any default as of the date of the petition. $_____

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: _____

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | |
|---|---|---|
| | ☐ Yes. Check one: | Amount entitled to priority |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   06/22/2020
                   MM / DD / YYYY

_Staci Ulrich_____
      Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Staci Stupka Ulrich | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Senior Recoupment Counsel, VP | | |
| Company | Fidelity National Title Insurance Company | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 2533 N. 117th Ave. | | |
| | Number      Street | | |
| | Omaha | NE | 68164 |
| | City | State | ZIP Code |
| Contact phone | 4024987113 | Email staci.ulrich@fnf.com | |

# Mortgage Proof of Claim Attachment                              (12/15)

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

## Part 1: Mortgage and Case Information

| | |
|---|---|
| Case number: | **19-13402-BFK** |
| Debtor 1: | **CHRISTIAN E. DORSEY** |
| Debtor 2: | |
| Last 4 digits to identify: | |
| Creditor: | Fidelity National Title Ins. Co. |
| Servicer: | Fidelity National Title Ins. Co. |
| Fixed accrual/daily simple interest/other: | **Variable** |

## Part 2: Total Debt Calculation

| | |
|---|---|
| Principal Balance: | $112,297.48 |
| Deferred Balance: | $0.00 |
| Interest due: | $3,464.81 |
| Fees, costs due: | $200.00 |
| Escrow deficiency for funds advanced: | $0.00 |
| Less total funds on hand: | -$0.00 |
| **Total debt:** | **$115,962.29** |

## Part 3: Arrearage as of Date of the Petition

| | |
|---|---|
| Principal & interest due: | $0.00 |
| Prepetition fees due: | $200.00 |
| Escrow deficiency for funds advanced: | $0.00 |
| Projected escrow shortage: | $0.00 |
| Less funds on hand: | -$0.00 |
| **Total prepetition arrearage:** | **$200.00** |

## Part 4: Monthly Mortgage Payment

| | |
|---|---|
| Principal & Interest: | $1,024.35 |
| Monthly escrow: | $0.00 |
| Private mortgage insurance: | $0.00 |
| **Total monthly payment:** | **$1,024.35** |

## Part 5: Loan Payment History from First Date of Default

### Account Activity

| A. Date | B. Contractual PMT AMT | C. Funds Received | D. Amount Incurred | E. Description | F. Contractual Due Date | G. Prin, Int, & Escrow Past due balance |
|---|---|---|---|---|---|---|
| | | | | Beginning Balance | | $0.00 |
| 2/3/2019 | $1,109.32 | $0.00 | $0.00 | Monthly Mortgage Payment | 2/3/2019 | $1,109.32 |
| 3/3/2019 | $1,078.63 | $0.00 | $0.00 | Monthly Mortgage Payment | 2/3/2019 | $2,187.95 |
| 4/3/2019 | $1,043.25 | $0.00 | $0.00 | Monthly Mortgage Payment | 2/3/2019 | $3,231.20 |
| 4/10/2019 | $0.00 | $0.00 | $50.00 | Late Charge Assessed | 2/3/2019 | $3,231.20 |
| 5/3/2019 | $1,114.02 | $0.00 | $0.00 | Monthly Mortgage Payment | 2/3/2019 | $4,345.22 |
| 5/20/2019 | $0.00 | $0.00 | $50.00 | Late Charge Assessed | 2/3/2019 | $4,345.22 |
| 6/3/2019 | $1,078.63 | $0.00 | $0.00 | Monthly Mortgage Payment | 2/3/2019 | $5,423.85 |
| 6/19/2019 | $0.00 | $0.00 | $50.00 | Late Charge Assessed | 2/3/2019 | $5,423.85 |
| 7/3/2019 | $1,060.93 | $0.00 | $0.00 | Monthly Mortgage Payment | 2/3/2019 | $6,484.78 |
| 7/19/2019 | $0.00 | $0.00 | $50.00 | Late Charge Assessed | 2/3/2019 | $6,484.78 |
| 8/3/2019 | $1,114.02 | $0.00 | $0.00 | Monthly Mortgage Payment | 2/3/2019 | $7,598.80 |
| 9/3/2019 | $1,056.32 | $0.00 | $0.00 | Monthly Mortgage Payment | 2/3/2019 | $8,655.12 |

### How Funds Were Applied/Amount Incurred

| H. Amount to Principal | I. Amount to Interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied Funds |
|---|---|---|---|---|
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | $50.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | $50.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | $50.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | $50.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

### Balance After Amount Received or Incurred

| M. Principal | N. Accrued interest balance | O. Escrow Balance | P. Fees/charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|
| $112,297.48 | | $0.00 | $0.00 | $0.00 |
| $112,297.48 | | $0.00 | $0.00 | $0.00 |
| $112,297.48 | | $0.00 | $0.00 | $0.00 |
| $112,297.48 | | $0.00 | $50.00 | $0.00 |
| $112,297.48 | | $0.00 | $50.00 | $0.00 |
| $112,297.48 | | $0.00 | $100.00 | $0.00 |
| $112,297.48 | | $0.00 | $100.00 | $0.00 |
| $112,297.48 | | $0.00 | $150.00 | $0.00 |
| $112,297.48 | | $0.00 | $150.00 | $0.00 |
| $112,297.48 | | $0.00 | $200.00 | $0.00 |
| $112,297.48 | | $0.00 | $200.00 | $0.00 |
| $112,297.48 | | $0.00 | $200.00 | $0.00 |

**Mortgage Proof of Claim Attachment**

# Mortgage Proof of Claim Attachment: Additional Page

(12/15)

Case number:    19-13402-BFK
Debtor:         CHRISTIAN E. DORSEY

## Part 5: Loan Payment History from First Date of Default

| Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/3/2019 | $1,096.32 | $0.00 | $0.00 | Monthly Mortgage Payment | 2/3/2019 | $9,791.44 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $112,297.48 | $0.00 | $0.00 | $200.00 | $0.00 |
| 10/16/2019 | | | | Bankruptcy Petition Filing | 2/3/2019 | | | | | | | | $112,297.48 | | | $200.00 | $0.00 |

Official Form 410A                    **Mortgage Proof of Claim Attachment**

# ◐ PNCBANK

## HOME EQUITY LINE OF CREDIT AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $█3,000.00 | 08-█4-2008 | 08-█4-2035 | ███ | | ███ | 99365 | |

References in the boxes above are for use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** CHRISTIAN E DORSEY
RACHAEL J FELDMAN
█009 S COLUMBUS ST
ARLINGTON, VA  22204

**Lender:** PNC Bank, National Association
Consumer Loan Center
2730 Liberty Avenue
Pittsburgh, PA  █5222

**CREDIT LIMIT: $█3,000.00**                        **DATE OF AGREEMENT: August █4, 2008**

**Introduction.** This Home Equity Line of Credit Agreement ("Agreement") governs your line of credit (the "Credit Line" or the "Credit Line Account") issued through PNC Bank, National Association. In this Agreement, the words "Borrower," "you," "your," and "Applicant" mean each and every person who signs this Agreement, including all Borrowers named above. The words "we," "us," "our," and "Lender" mean PNC Bank, National Association. **You agree to the following terms and conditions:**

**Promise to Pay.** You promise to pay PNC Bank, National Association, or order, the total of all credit advances and **FINANCE CHARGES,** together with all costs and expenses for which you are responsible under this Agreement or under the "Deed of Trust" which secures your Credit Line. You will pay your Credit Line according to the payment terms set forth below. **If there is more than one Borrower, each is jointly and severally liable on this Agreement. This means we can require any Borrower to pay all amounts due under this Agreement, including credit advances to any Borrower.** Each Borrower authorizes any other Borrower, on his or her signature alone, to cancel the Credit Line, to request and receive credit advances, and to do all other things necessary to carry out the terms of this Agreement. We can release any Borrower from responsibility under this Agreement, and the others will remain responsible.

**Term.** The term of your Credit Line will begin as of the date of this Agreement ("Opening Date") and will continue until August █4, 2035 ("Maturity Date"). All indebtedness under this Agreement, if not already paid pursuant to the payment provisions below, will be due and payable upon maturity. The initial advance on your Credit Line Account, in the amount of $█3,000.00, will be made on the Opening Date to be applied toward the purchase of the property securing your Credit Line Account. The period in which advances may be made on your Credit Line Account (the "Draw Period") begins on the Opening Date and will continue as follows: the draw period will end on the last day of the monthly billing cycle in which the seventh anniversary of the opening of this account occurs. Except for your initial advance, your ability to obtain additional advances will begin following the expiration of your right to cancel. After the Draw Period ends, the repayment period will begin and you will no longer be able to obtain credit advances. The length of the repayment period is as follows: The repayment period will begin with the first billing cycle following the end of the Draw Period and will continue until you pay in full all amounts owing under this Agreement ("Repayment Period"). The length of the Repayment Period will depend on the balance in this account at the end of the first billing cycle in the Repayment Period, the amount of your Minimum Payment and the Annual Percentage Rate(s) which apply. You agree that we may renew or extend the period during which you may obtain credit advances or make payments. You further agree that we may renew or extend your Credit Line Account.

**Minimum Payment.** Initially, during the Draw Period, your "Regular Payment" will equal the greater of (█ the sum of your accrued **FINANCE CHARGES,** credit insurance premiums, if any; and Annual and other fees, if applicable (but not including Late Charges, if any) which have accrued during the billing cycle; or (2) $25.00 ("First Payment Stream"). You will make up to 84 of these payments. Your payments will be due monthly.

Thereafter, during the Repayment Period and until the account is paid in full, your "Regular Payment" will equal the greater of (█ the sum of your accrued **FINANCE CHARGES,** credit insurance premiums, if any; and Annual and other fees, if applicable (but not including Late Charges, if any) which have accrued during the billing cycle, plus █240th of the principal balance at the end █ the first billing cycle in the Repayment Period; or (2) $25.00 ("Second Payment Stream"). Your payments will be due monthly.

Your "Minimum Payment" will be the Regular Payment, plus any amounts past due and all other charges. An increase in the **ANNUAL PERCENTAGE RATE** may increase the amount of your Regular Payment.

You agree to pay not less than the Minimum Payment on or before the due date indicated on your periodic billing statement. If you have selected to have the payment automatically deducted from your checking account, this will occur on or before the payment due date each month.

**How Your Payments Are Applied.** Unless otherwise agreed or required by applicable law, payments and other credits will be applied to (█ all billed finance charges; (2) credit insurance premiums, if any; (3) late charges, if any; (4) annual fee, if any; (5) other fees; (6) amounts incurred to protect the security of the mortgage; (7) principal and (8) unbilled finance charges; and any remaining unapplied payment will be treated as a prepayment.

**Minimum Payment after Termination.** If this Credit Line Account is terminated during the Draw Period in accordance with the "Termination and Acceleration" provision of the section on "Lender's Rights," for the purposes of calculating the Regular Payment, the billing cycle in which the termination occurs shall be considered to be a cycle during the Draw Period, all subsequent █████████████ during the Repayment Period, and the Regular Payment shall be calculated as set forth above for the "S█████ █████████ █████ nt is terminated during the Repayment Period, the cycle in which the termination occurs and all subsec █████████████████ ycles during the Repayment Period, and the Regular Payment will be calculated as set forth abov █████████████████ After termination, the Regular Payment shall be calculated in accordance with this paragraph unless we █ ████████████████ and Acceleration" provision of the section on "Lender's Rights".

**Receipt of Payments.** All payments must be made by a check, money order, or other instrument in U.S. █████ ██████████████ y us at the remittance address shown on your periodic billing statement. Payments received at that address prior to █ █00 AM Eastern Time on any business day will be credited to your Credit Line as of the date received. If we receive payments at other locations, such payments will be credited promptly to your Credit Line, but crediting may be delayed for up to two (2) days after receipt.

**Credit Limit.** This Agreement covers a revolving line of credit for the principal amount of One Hundred Thirty-three Thousand & 00/█00 Dollars (█3,000.00), which will be your "Credit Limit" under this Agreement. **During the Draw Period we will honor your request for credit advances subject to the section below on Lender's Rights.** You may borrow against the Credit Line, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit. Your Credit Limit is the maximum amount you may have outstanding at any one time. You agree not to attempt, request, or obtain a credit advance that will make your Credit Line Account balance exceed your Credit Limit. Your Credit Limit will not be increased should you overdraw your Credit Line Account. If you exceed your Credit Limit, you agree to repay immediately the amount by which your Credit Line Account exceeds your Credit Limit, even if we have not yet billed you. Any credit advances in excess of your Credit Limit will not be secured by the Deed of Trust covering your principal dwelling.

**Charges to your Credit Line.** We may charge your Credit Line to pay other fees and costs that you are obligated to pay under this Agreement, the Deed of Trust or any other document related to your Credit Line. In addition, we may charge your Credit Line for funds required for continuing insurance coverage as described in the paragraph titled "Insurance" below or as described in the Deed of Trust for this transaction. We may also, at our option, charge your Credit Line to pay costs or expenses to protect or perfect our security interest in your principal dwelling. These costs or expenses include, without limitation, payments to cure defaults under any existing liens on your principal dwelling. If you do not pay your property taxes, we may charge your Credit Line and pay the delinquent taxes. Any amount so charged to your Credit Line will be a credit advance and will decrease the funds available, if any, under the Credit Line. However, we have no obligation to provide any of the credit advances referred to in this paragraph.

**Credit Advances.** After the Effective Disbursement Date of this Agreement, you may obtain credit advances under your Credit Line as follows:

**Credit Line Checks.** Writing a preprinted "Credit Line Check" that we will supply to you.

**Overdrafts.** Writing a check on your designated checking account with us in excess of the available collected balance in the account.

**Other Methods.** By using other methods we may permit from time to time, Notwithstanding the previous section, overdraft protection is not available for all accounts.

If there is more than one person authorized to use this Credit Line Account, you agree not to give us conflicting instructions, such as one Borrower telling us not to give advances to the other.

**Limitations on the Use of Checks.** We reserve the right not to honor Credit Line Checks in the following circumstances:

HOME EQUITY LINE OF CREDIT AGREEMENT

| Loan N█████████ | (Continued) | Page 2 |

**Credit Limit Violation.** Your Credit Limit has been or would be exceeded by paying the Credit Line Check.

**Post-dated Checks.** Your Credit Line Check is post-dated. If a post-dated Credit Line Check is paid and as a result any other check is returned or not paid, we are not responsible.

**Stolen Checks.** Your Credit Line Checks have been reported lost or stolen.

**Unauthorized Signatures.** Your Credit Line Check is not signed by an "Authorized Signer" as defined below.

**Termination or Suspension.** Your Credit Line has been terminated or suspended as provided in this Agreement or could be if we paid the Credit Line Check.

**Other Restriction. Less Than Minimum.** Your credit line check is less than the minimum amount required by this agreement or you are in violation of any other transaction requirement or would be if we paid the check.

If we pay any Credit Line Check under these conditions, you must repay us, subject to applicable laws, for the amount of the Credit Line Check. The Credit Line Check itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of a check is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor. We may choose not to return Credit Line Checks along with your periodic billing statements; however, your use of each Credit Line Check will be reflected on your periodic statement as a credit advance. We do not "certify" Credit Line Checks drawn on your Credit Line.

**Transaction Requirements.** The following transaction limitations will apply to the use of your Credit Line:

**Credit Line Credit Line Check and Other Methods Limitations.** The following transaction limitations will apply to your Credit Line and the writing of Credit Line Checks and accessing by other methods.

**Minimum Advance Amount.** The minimum amount of any credit advance that can be made on your Credit Line is $█00.00. This means any Credit Line Check must be written for at least the minimum advance amount.

**Overdraft Limitations.** The following transaction limitations will apply to your Credit Line and writing a check in excess of your checking account balance.

**Other Transaction Requirements.** If you have elected Overdraft Protection in connection with this Credit Line Account, we will make a deposit to the checking account you have designated whenever you withdraw from that checking account, either by writing a check from the checking account or in some other way, more money than the balance in the checking account. The amount which we will deposit will be the amount by which your withdrawal exceeds the balance in the checking account, rounded up to the next whole $█.00. However, the amount which we will deposit will not be less than $50.00. We will charge the amount of the deposit as a loan from this Credit Line Account. We do not have to make a deposit to the checking account if a deposit will cause the balance on this Credit Line Account to exceed the maximum credit or would violate the terms of this Agreement. Checking account checks which are returned will be subject to our regular overdraft charges.

**Other Limitations.** You may not have both overdraft protection and Automatic Payments deducted from your checking account.

**Limitation on All Access Devices.** You may not use any access device, whether described above or added in the future, for any illegal or unlawful transaction, and we may decline to authorize any transaction that we believe poses an undue risk of illegality or unlawfulness. Notwithstanding the foregoing, we may collect on any debt arising out of any illegal or unlawful transaction.

**Authorized Signers.** The words "Authorized Signer" on Credit Line Checks as used in this Agreement mean and include each person who  (a) signs the application for this Credit Line,  (b) signs this Agreement, or  (c) has executed a separate signature authorization card for the Credit Line Account.

**Lost Credit Line Checks.** If you lose your Credit Line Checks or if someone is using them without your permission, you agree to let us know immediately. The fastest way to notify us is by calling us at (888) 762-2265. You also can notify us at our address shown at the beginning of this Agreement.

**Future Credit Line Services.** Your application for this Credit Line also serves as a request to receive any new services (such as access devices) which may be available at some future time as one of our services in connection with this Credit Line. You understand that this request is voluntary and that you may refuse any of these new services at the time they are offered. You further understand that the terms and conditions of this Agreement will govern any transactions made pursuant to any of these new services.

**Collateral.** You acknowledge this Agreement is secured by the following collateral described in the security instrument listed herein: a Credit Line Deed of Trust to a trustee in favor of us on real property located in ARLINGTON County, Commonwealth of Virginia. The Real Property or its address is commonly known as █09 S COLUMBUS ST, ARLINGTON, VA  22204.

**Insurance.** You must obtain insurance on the Property securing this Agreement that is reasonably satisfactory to us. You may obtain property insurance through any company of your choice that is reasonably satisfactory to us. You have the option of providing any insurance required under this Agreement through an existing policy or a policy independently obtained and paid for by you, subject to our right, for reasonable cause before credit is extended, to decline any insurance provided by you. Subject to applicable law, if you fail to obtain or maintain insurance as required in the Deed of Trust, we may purchase insurance to protect our own interest, add the premium to your balance, pursue any other remedies available to us, or do any one or more of these things.

**Right of Setoff.** To the extent permitted by applicable law, we reserve a right of setoff in all your accounts with us (whether checking, savings, or some other account), including without limitation, all accounts you may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. You authorize us, to the extent permitted by applicable law, to charge or setoff all sums owing on this Agreement against any and all such accounts.

**Periodic Statements.** If you have a balance owing on your Credit Line Account or have any account activity, we will send you a periodic statement. It will show, among other things, credit advances, FINANCE CHARGES, other charges, payments made, other credits, your "Previous Balance," and your "New Balance." Your statement also will identify the Minimum Payment you must make for that billing period and the date it is due.

**When FINANCE CHARGES Begin to Accrue.** Periodic FINANCE CHARGES for credit advances under your Credit Line will begin to accrue on the date credit advances are posted to your Credit Line. There is no "free ride period" which would allow you to avoid a FINANCE CHARGE on your Credit Line credit advances.

**Method Used to Determine the Balance on Which the FINANCE CHARGE Will Be Computed.** A daily FINANCE CHARGE will be imposed on all credit advances made under your Credit Line imposed from the date of each credit advance based on  the "Average Daily Balance" (including current transactions) in the account during the billing cycle. To get the Average Daily Balance we take the beginning balance of your Credit Line Account each day and add any new advances posted that day, and subtract any payments, credits, Late Charges, Annual Fees, other charges and unpaid Finance Charges. This gives us a daily balance. Then we add up all the daily balances for the billing cycle and divide by the total number of days in the billing cycle. The result is the Average Daily Balance.

**Method of Determining the Amount of FINANCE CHARGE.** Any FINANCE CHARGE is determined by applying the "Periodic Rate" to the balance described herein. This is your FINANCE CHARGE calculated by applying a Periodic Rate.

**Periodic Rate and Corresponding ANNUAL PERCENTAGE RATE.** We will determine the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE as follows. We start with an independent index which is the Prime rate as published in the Wall Street Journal. When a range of rates has been published, the higher of the rates will be used (the "Index"). For any billing cycle, we will use the Index value in effect on the last day of the preceding calendar month which is reported. To determine the Periodic Rate that will apply to your First Payment Stream, we add a margin to the value of the Index, then divide the value by the number of days in a year (daily). To obtain the ANNUAL PERCENTAGE RATE we multiply the Periodic Rate by the number of days in a year (daily). This result is the ANNUAL PERCENTAGE RATE for your First Payment Stream. To determine the Periodic Rate that will apply to your Second Payment Stream, we add a margin to the value of the Index, then divide the value by the number of days in a year (daily). To obtain the ANNUAL PERCENTAGE RATE we multiply the Periodic Rate by the number of days in a year (daily). This result is the ANNUAL PERCENTAGE RATE for your Second Payment Stream. The ANNUAL PERCENTAGE RATE includes only interest and no other costs.

The Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE on your Credit Line will increase or decrease as the Index increases or decreases from time to time. Any increase in the Periodic Rate will take the form of higher payment amounts. Adjustments to the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE resulting from changes in the Index will take effect monthly. In no event will the corresponding ANNUAL PERCENTAGE RATE be more than the lesser of █.000% or the maximum rate allowed by applicable law. Today the Index is 5.000% per annum, and therefore the initial Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE on your Credit Line are as stated below:SSSSS3

## HOME EQUITY LINE OF CREDIT AGREEMENT
### (Continued)

| Loan No | | Page 3 |

**Current Rates for the First Payment Stream**

| Range of Balance or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| All Balances | 0.250 % | 5.250 % | 0.0▇438 % |

**Current Rates for the Second Payment Stream**

| Range of Balance or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| All Balances | 0.250 % | 5.250 % | 0.0▇438 % |

Notwithstanding any other provision of this Agreement, we will not charge interest on any undisbursed loan proceeds.

**Conditions Under Which Other Charges May Be Imposed.** You agree to pay all the other fees and charges related to your Credit Line as set forth below:

**Annual Fee.** A nonrefundable Annual Fee of $30.00 will be charged to your Credit Line at the following time: The Annual Fee will be charged to your Credit Line Account on the first day of each billing cycle immediately following each anniversary of the account during the Draw Period. The Annual Fee will not be charged during the first year of the Draw Period.

**Early Account Closure Fee.** If the maximum Credit Limit on this Account is more than $50,000 and you pay the balance in full and close this Account within three years of the date of this Agreement which appears at the top of page one, we will charge you an Early Account Closure Fee of $350.00. If Lender imposes an Early Account Closure Fee as authorized by this section, Lender may require that the Early Account Closure Fee be paid before Lender satisfies the Mortgage/Deed of Trust of record.

**Returned Items.** You may be charged $25.00 if you pay your Credit Line obligations with a check, draft, or other item that is dishonored for any reason, unless applicable law requires a lower charge or prohibits any charge.

**Late Charge.** If a payment is ▇ days or more late, Borrower will be charged ▇.000% of the regular scheduled payment or $20.00, whichever is greater.

**Other Charges.** Your Credit Line Account may be charged the following other charges: **Returned Line of Credit Check Fee.** We will charge you a fee for each check written on this account which is properly dishonored by us for any reason. The amount of this other charge is: $25.00.

**Overlimit Charge.** Your Credit Line Account may be charged $25.00 if you cause your Credit Line Account to go over your Credit Limit. This includes writing a Credit Line Check in excess of your available balance.

**Lender's Rights.** Under this Agreement, we have the following rights:

**Termination and Acceleration.** We can terminate your Credit Line Account and require you to pay us the entire outstanding balance in one payment, and charge you certain fees, if any of the following happen: ● You commit fraud or make a material misrepresentation at any time in connection with this Credit Agreement. This can include, for example, a false statement about your income, assets, liabilities, or any other aspects of your financial condition. (2) You do not meet the repayment terms of this Credit Agreement. (3) Your action or inaction adversely affects the collateral for the plan or our rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without our permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**Suspension or Reduction.** In addition to any other rights we may have, we can suspend additional extensions of credit or reduce your Credit Limit during any period in which any of the following are in effect:

● The value of your property declines significantly below the property's appraised value for purposes of this Credit Line Account. We may from time to time obtain appraisals of the property at our expense. If we prohibit additional extensions of credit or reduce the amount of your credit limit because of a significant decline in the value of the Property, and the value of the Property subsequently increases, you may provide us with a written request to remove the restrictions, which request shall be accompanied by an appraisal of the Property obtained by you at your expense. For the purpose of this section, an appraisal shall be defined as a certified appraisal by a licensed or certified real estate appraiser, as required by law or regulation, who regularly, in the course of business, makes appraisals of comparable residential real estate in the geographic area where the Property is located.

(2) We reasonably believe that you will be unable to fulfill your payment obligations under your Credit Line Account due to a material change in your financial circumstances.

(3) You are in default under any material obligations of this Credit Line Account. We consider all of your obligations to be material. Categories of material obligations include the events described above under Termination and Acceleration, obligations to pay fees and charges, obligations and limitations on the receipt of credit advances, obligations concerning maintenance or use of the property or proceeds, obligations to pay and perform the terms of any other deed of trust, mortgage or lease of the property, obligations to notify us and to provide documents or information to us (such as updated financial information), obligations to comply with applicable laws (such as zoning restrictions), and obligations of any comaker. No default will occur until we mail or deliver a notice of default to you, so you can restore your right to credit advances.

(4) We are precluded by government action from imposing the **ANNUAL PERCENTAGE RATE** provided for under this Agreement.

(5) The priority of our security interest is adversely affected by government action to the extent that the value of the security interest is less than one hundred twenty percent (▇20%) of the Credit Limit.

(6) We have been notified by governmental authority that continued advances may constitute an unsafe and unsound business practice.

**Change in Terms.** We may make changes to the terms of this Agreement if you agree to the change in writing at that time, if the change will unequivocally benefit you throughout the remainder of your Credit Line Account, or if the change is insignificant (such as changes relating to our data processing systems). If the Index is no longer available, we will choose a new index and margin. The new index and margin will have an historical movement substantially similar to the original Index, and the new index and margin will result in an **ANNUAL PERCENTAGE RATE** that is substantially similar to the rate in effect at the time the original Index becomes unavailable. We may prohibit additional extensions of credit or reduce your Credit Limit during any period in which the maximum **ANNUAL PERCENTAGE RATE** under your Credit Line Account is reached.

**Collection Costs.** Subject to any limits under applicable law, upon default, you agree to pay our attorneys' fees and all of our other collection expenses, whether or not there is a lawsuit, including legal expenses for bankruptcy proceedings.

**Access Devices.** If your Credit Line is suspended or terminated, you must immediately return to us all Credit Line Checks and any other access devices. Any use of Credit Line Checks or other access devices following suspension or termination may be considered fraudulent. You will also remain liable for any further use of Credit Line Checks or other Credit Line access devices not returned to us.

**Delay in Enforcement.** We may delay or waive the enforcement of any of our rights under this Agreement without losing that right or any other right. If we delay or waive any of our rights, we may enforce that right at any time in the future without advance notice. For example, not terminating your account for non-payment will not be a waiver of our right to terminate your account in the future if you have not paid.

**Cancellation by you.** If you cancel your right to credit advances under this Agreement, you must notify us and return all Credit Line Checks and any other access devices to us. Despite cancellation, your obligations under this Agreement will remain in full force and effect until you have paid us all amounts due under this Agreement.

**Prepayment.** You may prepay all or any amount owing under this Credit Line at any time without penalty, except that we may charge you an Early Account Closure Fee, as stated above, and we will be entitled to receive all accrued **FINANCE CHARGES**, and other charges, if any. Payments in excess of your Minimum Payment will not relieve you of your obligation to continue to make your Minimum Payments. Instead, they will reduce the principal balance owed on the Credit Line. You agree not to send us payments marked "paid in full," "without recourse," or similar language. If you send such a payment, we may accept it without losing any of our rights under this Agreement, and you will remain obligated to pay any further amount owed to us. All written communications concerning disputed amounts, including any check or other

### HOME EQUITY LINE OF CREDIT AGREEMENT
(Continued)

| Loan No | ▮▮▮▮ | | Page 4 |

payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: PNC Bank, National Association, Central Customer Assistance (P5-PCLC-01-E), 2730 Liberty Avenue Pittsburgh, PA 15222.

**Notices.** All notices will be sent to your address as shown in this Agreement. Notices will be mailed to you at a different address if you give us written notice of a different address. You agree to advise us promptly if you change your mailing address.

**Transfer or Assignment.** Without prior notice or approval from you, we reserve the right to sell or transfer your Credit Line Account and our rights and obligations under this Agreement to another lender, entity, or person, and to assign our rights under the Deed of Trust. Your rights under this Agreement belong to you only and may not be transferred or assigned. Your obligations, however, are binding on your heirs and legal representatives. Upon any such sale or transfer, we will have no further obligation to provide you with credit advances or to perform any other obligation under this Agreement.

**Tax Consequences.** You understand that neither we, nor any of our employees or agents, make any representation or warranty whatsoever concerning the tax consequences of your establishing and using your Credit Line, including the deductibility of interest, and that neither we nor our employees or agents will be liable in the event interest on your Credit Line is not deductible. You should consult your own tax advisor for guidance on this subject.

**Homestead Waiver.** You, to the extent permitted by law, hereby waive your homestead exemption with respect to all property subject to any security interest or lien granted to secure this loan.

**Agreements about the Property.** You agree:
(a) That if the Property is part of a condominium or planned unit development, to comply with all by-laws, regulations or restrictions of record.
(b) To permit our agents to inspect the Property from time to time, after reasonable notice.

**Promises.** You agree not to commit fraud or material misrepresentation in connection with this account. You also agree not to act or fail to act if such action or failure adversely affects our security for this account or our rights in that security. You agree to give us a Mortgage/Deed of Trust on the Property, which is in the proper form so that it can be recorded in the office of the Recorder of Deeds in the county where the Property is located. You agree to fully cooperate with us to correct any clerical errors and, if we reasonably ask you, to sign a corrective Mortgage/Deed of Trust or a new Mortgage/Deed of Trust if the original is lost, destroyed, damaged, contains errors, or for any reason cannot be recorded.

**Remedies Cumulative.** If any circumstance exists which would permit us to temporarily prohibit further extensions of credit under your Credit Line Account or reduce your Credit Limit or terminate your Credit Line Account and accelerate the balance:
(a) we may take such action at any time during which such circumstance continues to exist;and
(b) our remedies under this Agreement shall be cumulative and not alternative.

**Security Interest Charges.** You agree to pay any recording, filing, satisfaction and encumbrance fees and any documentary, recording or other taxes which may be charged. The charges are to repay Lender for the fees and taxes paid to public officials to protect, continue or release any security interest given in the Security Instrument.

**Waiver.** You waive all defenses based on suretyship and impairment of collateral or security.

**Waiver by Lender.** If you have made or make in the future another loan agreement with Lender, Lender may obtain a security interest in your principal dwelling or the principal dwelling of someone else to secure that other loan agreement. That security agreement may provide that the principal dwelling secures not only that other loan agreement but also all other loan agreements of yours with Lender. Lender waives (gives up) any right to claim a security interest in the principal dwelling of any person to secure this Agreement unless the security interest is specifically given to secure this Agreement.

**Subordination Fee.** Unless prohibited by applicable law, we will charge you a fee of $100.00 each time you request and we agree to subordinate our lien position to that of another creditor.

**Notify Us of Inaccurate Information We Report To Consumer Reporting Agencies.** Please notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. The written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: PNC Bank, National Association, Consumer Loan Center, P.O. Box 3180, Pittsburgh, PA 15230-3180.

**Credit Available for New Loans.** In calculating the principal balance for the purpose of determining the maximum amount of credit that is available for new loans, we may delay crediting payments for a reasonable time for checks and other payment methods to be collected from the drawee (to clear).

**Governing Law.** This Agreement has been accepted by Lender in Pennsylvania and all loans shall be extended by Lender to Borrower in Pennsylvania. Regardless of the state of Borrower's residence or the place to which Borrower submitted an application, Borrower agrees that the provisions of this Agreement relating to interest, charges and fees shall be governed by and construed in accordance with federal law and, as made applicable by federal law, Pennsylvania law. Unless preempted by federal law, other substantive terms and provisions shall be governed by and construed in accordance with the laws of Pennsylvania; procedural matters relating to the enforcement of the obligations stated in this Agreement and relating to the granting, perfection and enforcement of the security interest shall be governed by the laws of the state where enforcement, granting or perfection takes place.

**Credit Information and Related Matters.** You agree that, upon our request, you will provide us with a current financial statement, a new credit application, or both, on forms provided by us. You also agree we may obtain credit reports on you at any time, at our sole option and expense, for any reason, including but not limited to, determining whether there has been an adverse change in your financial condition. If the collateral securing this obligation is real property, we may require a new appraisal of that real property at any time, including an internal inspection, at our sole option and expense. You authorize us to treat information about you and your accounts in the manner described in our Consumer Information Privacy Principles, as they may be amended from time to time.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Interpretation.** You agree that this Agreement, together with the Deed of Trust, is the best evidence of your agreements with us. If we go to court for any reason, we can use a copy, filmed or electronic, of any periodic statement, this Agreement, the Deed of Trust or any other document to prove what you owe us or that a transaction has taken place. The copy, microfilm, microfiche, or optical image will have the same validity as the original. You agree that, except to the extent you can show there is a billing error, your most current periodic statement is the best evidence of your obligation to pay.

**Severability.** If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable.

**Acknowledgment.** You understand and agree to the terms and conditions in this Agreement. By signing this Agreement, you acknowledge that you have read this Agreement. You also acknowledge receipt of a completed copy of this Agreement, including the Fair Credit Billing Notice and the early home equity line of credit application disclosure, in addition to the handbook entitled "What you should know about Home Equity Lines of Credit," given with the application.

This Agreement is dated August 14, 2008.

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

X _____ (Seal)          X _____ (Seal)
CHRISTIAN E DORSEY                          RACHAEL S FELDMAN

**HOME EQUITY LINE OF CREDIT AGREEMENT**
(Continued)

| Loan No | | Page 5 |

---

# BILLING ERROR RIGHTS

### YOUR BILLING RIGHTS

### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify us in case of errors or questions about your bill.**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at

      **Central Customer Assistance**
      **Consumer Loan Center (P5-PCLC-█-E)**
      **2730 Liberty Avenue**
      **Pittsburgh, PA █222**
or at the address listed on your bill.  Write to us as soon as possible.  We must hear from you no later than sixty (60) days after we sent you the first bill on which the error or problem appeared.  You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

      Your name and account number.

The dollar amount of the suspected error.

Describe the error and explain, if you can, why you believe there is an error.  If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong.  To stop the payment, your letter must reach us three (3) business days before the automatic payment is scheduled to occur.

**Your rights and our responsibilities after we receive your written notice.**

We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then.  Within ninety (90) days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent.  We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit Limit.  You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount.  If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount.  In either case, we will send you a statement of the amount you owe and the date on which it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent.  However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill.  And, we must tell you the name of anyone we reported you to.  We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

---

LASER PRO Lending, Ver. 5.41.00.004  Copr. Harland Financial Solutions, Inc. 1997, 2008.  All Rights Reserved.  - VA/PA  T:\CFN\PL\D25 FC  TR-1331322B  PR-FMEOD

RECORDATION REQUESTED BY:
    PNC Bank, National Association
    Consumer Loan Center
    2730 Liberty Avenue
    Pittsburgh, PA 15222

WHEN RECORDED MAIL TO:
    PNC Bank, National Association
    Consumer Loan Ctr (P5-PCLC-01-I)
    2730 Liberty Avenue
    Pittsburgh, PA 15222

Return To:
MBH Settlement Group, L.C.
4028 Fair Ridge Drive
Suite 110
Fairfax, VA 22033

TAx 13#

SEND TAX NOTICES TO:
    CHRISTIAN E DORSEY
    RACHAEL J FELDMAN
    1009 S COLUMBUS ST
    ARLINGTON, VA 22204

Tax Map Reference No(s): LOT 3 BLOCK 1
    SECTION 1 COLUMBIA FOREST
Parcel ID No(s): LOT 3 BLOCK 1 SECTION
    1 COLUMBIA FOREST

FOR RECORDER'S USE ONLY

Page 1

2513

This Deed of Trust prepared by:   JASMINE MOBLEY, PNC Bank, National Association

# ◉ PNCBANK

## DEED OF TRUST

### THIS IS A CREDIT LINE DEED OF TRUST

Maximum aggregate amount of principal
to be secured hereby at any one time: $133,000.00

### Name and address of Noteholder secured hereby:

**PNC Bank, National Association
Consumer Loan Center
2730 Liberty Avenue
Pittsburgh, PA 15222**

584

**THIS DEED OF TRUST** is dated August 14, 2008, among CHRISTIAN E DORSEY, whose address is 1009 S COLUMBUS ST, ARLINGTON, VA 22204 and RACHAEL J FELDMAN, whose address is 1009 S COLUMBUS ST, ARLINGTON, VA 22204; Husband and Wife ("Grantor"); PNC Bank, National Association, whose address is Consumer Loan Center, 2730 Liberty Avenue, Pittsburgh, PA 15222 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and JOHN R. PRESTWICH , a resident of Virginia, whose address is 1801 N. Lynn Street, Arlington, VA 22209 ("Grantee," also referred to below as "Trustee").

**CONVEYANCE AND GRANT.** For valuable consideration, Grantor conveys, transfers, encumbers and pledges and assigns to Trustee for the benefit of Lender as Beneficiary, all of Grantor's present and future right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; and all rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in ARLINGTON COUNTY, Commonwealth of Virginia:

See Attached Exhibit A, which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.

The Real Property or its address is commonly known as  1009 S COLUMBUS ST, ARLINGTON, VA 22204.  The Real Property Tax Map Reference No(s) is/are LOT 3 BLOCK 1 SECTION 1 COLUMBIA FOREST.

⑫

**DEED OF TRUST**
**(Continued)**

**REVOLVING LINE OF CREDIT.** This Deed of Trust secures the Indebtedness including, without limitation, a revolving line of credit, which obligates Lender to make advances to Grantor so long as Grantor complies with all the terms of the Credit Agreement. Such advances may be made, repaid, and remade from time to time, subject to the limitation that the total outstanding balance owing at any one time, not including finance charges on such balance at a fixed or variable rate or sum as provided in the Credit Agreement, any temporary overages, other charges, and any amounts expended or advanced as provided in the Indebtedness paragraph or this paragraph, shall not exceed the Credit Limit as provided in the Credit Agreement. It is the intention of Grantor and Lender that this Deed of Trust secures the balance outstanding under the Credit Agreement from time to time from zero up to the Credit Limit as provided in the Credit Agreement and any intermediate balance. The initial advance under the terms of the Credit Agreement is to be applied toward the purchase of the Property.

**FUTURE ADVANCES.** In addition to the amounts specified in the Credit Agreement, this Deed of Trust also secures future advances.

Grantor presently, absolutely, and irrevocably assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND   (B)   PERFORMANCE OF EACH OF GRANTOR'S AGREEMENTS AND OBLIGATIONS UNDER THE CREDIT AGREEMENT, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Grantor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Grantor's obligations under the Credit Agreement, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

    **Possession and Use.** Until the occurrence of an Event of Default, Grantor may  (1)  remain in possession and control of the Property;  (2)  use, operate or manage the Property; and  (3)  acting as Lender's agent, collect the Rents from the Property.

    **Duty to Maintain.** Grantor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

    **Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property;  (2)  Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing,  (a)  any breach or violation of any Environmental Laws,   (b)  any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or  (c)  any actual or threatened litigation or claims of any kind by any person relating to such matters; and  (3)  Except as previously disclosed to and acknowledged by Lender in writing,  (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and  (b)  any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby  (1)  releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and  (2)  agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Deed of Trust, including the obligation to

**DEED OF TRUST**
**(Continued)**

Loan No:  ███████                                                                Page 3

indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are necessary to protect and preserve the Property.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due, except for the Existing Indebtedness referred to below, and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender, together with such

**DEED OF TRUST**
**(Continued)**

Loan No ████                                                                                      Page 4

other hazard and liability insurance as Lender may require. Policies shall be written in form, amounts, coverages and basis acceptable to Lender and issued by a company or companies acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the maximum amount of Grantor's credit line and the full unpaid principal balance of any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**LENDER'S EXPENDITURES.** If Grantor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, or (C) to make repairs to the Property then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Credit Agreement from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Credit Agreement and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Credit Agreement; or (C) be treated as a balloon payment which will be due and payable at the Credit Agreement's maturity. The Property also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Grantor warrants generally that: (a) Grantor holds good and marketable title to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Grantor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Trustee or Lender under this Deed of Trust, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**DEED OF TRUST**
**(Continued)**

Loan No [ ]

Page 5

**Survival of Promises.** All promises, agreements, and statements Grantor has made in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature and shall remain in full force and effect until such time as Grantor's Indebtedness is paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Credit Agreement; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place convenient to Lender and make it available to Lender promptly following Lender's request to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will

**DEED OF TRUST**
(Continued)

Loan No ██████████                                                    Page 6

make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Credit Agreement, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-In-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, terminates the credit line account, and otherwise performs all the obligations imposed upon Grantor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Grantor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Any reconveyance fee required by law shall be paid by Grantor, if permitted by applicable law.

**EVENTS OF DEFAULT.** Grantor will be in default under this Deed of Trust if any of the following happen: (A) Grantor commits fraud or makes a material misrepresentation at any time in connection with the Credit Agreement. This can include, for example, a false statement about Grantor's income, assets, liabilities, or any other aspects of Grantor's financial condition. (B) Grantor does not meet the repayment terms of the Credit Agreement. (C) Grantor's action or inaction adversely affects the collateral or Lender's rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without Lender's permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Grantor's obligations under this Deed of Trust, after Grantor's failure to do so, that decision by Lender will not affect Lender's right to declare Grantor in default and to exercise Lender's remedies.

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable. This right is in addition to all other rights given to holders of promissory notes under Title 55 of the Code of Virginia.

**Foreclosure.** With respect to all or any part of the Real Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law. Grantor expressly waives and releases any requirement or obligation that Lender or Trustee present evidence or otherwise proceed before any court or other judicial or quasi-judicial body as a precondition to or otherwise incident to the exercise of the powers of sale authorized by this Credit Line Deed of Trust. The proceeds of sale shall be applied by Trustee as follows: (a) first, to pay all proper advertising expenses, auctioneer's allowance, the expenses, if any, required to correct any irregularity in the title, premium for Trustee's bond, auditor's fee, attorneys' fees, and all other expenses of sale incurred in or about the protection and execution of this Deed of Trust, and all moneys advanced for taxes, assessments, insurance, and with interest thereon at the rate provided in the Credit Agreement, and all taxes and assessments due upon the Property at time of sale, and to retain as compensation a reasonable Trustee's commission; (b) second, to pay the whole amount then remaining unpaid on the Indebtedness; (c) third, to pay liens of record against the Property according to their priority of lien and to the extent that funds remaining in Trustee's hands are available; and (d) last, to pay the remainder of the proceeds, if any, to Grantor, Grantor's heirs, personal representatives, successors or assigns upon the delivery and surrender to the purchaser of possession of the Property, less costs and expenses of obtaining possession.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the

**DEED OF TRUST**
**(Continued)**

Loan No: ▮▮▮▮▮                                                                           Page 7

---

rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Credit Agreement or available at law or in equity.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least fourteen (14) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Credit Agreement rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, a reasonable Trustee's commission and reasonable attorney fees incurred by the Trustee in performing its duties under the Deed of Trust, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee (and each of them if more than one) shall have the power to take the following actions with respect to the Property upon the written request of Lender and Grantor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**DEED OF TRUST**
**(Continued)**

Loan No: ████████

Page 8

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Grantor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender will have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, at any time hereafter and without prior notice and without specifying any reason, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office in the jurisdiction where this Deed of Trust has been recorded. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Grantor, the book and page where this Deed of Trust is recorded, and the name of the successor trustee and the county, city or town in which he or she resides, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**Power to Act Separately.** If more than one Trustee is named in this Deed of Trust, any Trustee may act alone, without the joinder of any other Trustee, to exercise any or all the powers given to the Trustees collectively in this Deed of Trust or by applicable law.

**NOTICES.** Any notice required to be given under this Deed of Trust, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, if hand delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any person may change his or her address for notices under this Deed of Trust by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors. It will be Grantor's responsibility to tell the others of the notice from Lender.

**COMPLIANCE WITH ALL LAWS.** Grantor shall comply with all laws respecting ownership or use of the Property. If the Property is a condominium or planned unit development, Grantor shall comply with all by-laws, regulations and restrictions of record.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** What is written in this Deed of Trust and in the Related Documents is Grantor's entire agreement with Lender concerning the matters covered by this Deed of Trust. To be effective, any change or amendment to this Deed of Trust must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Joint and Several Liability.** All obligations of Grantor under this Deed of Trust shall be joint and several, and all references to Grantor shall mean each and every Grantor. This means that each Grantor signing below is responsible for all obligations in this Deed of Trust.

**No Waiver by Lender.** Grantor understands Lender will not give up any of Lender's rights under this Deed of Trust unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Grantor will not have to comply with the other provisions of this Deed of Trust. Grantor also understands that if Lender does consent to a request, that does not mean that Grantor will not have to get Lender's consent again if the situation happens again. Grantor further understands that just because Lender consents to one or more of

**DEED OF TRUST**
**(Continued)**

Loan No: [redacted]                                                                                    Page 9

Grantor's requests, that does not mean Lender will be required to consent to any of Grantor's future requests. Grantor waives presentment, demand for payment, protest, and notice of dishonor.

**Severability.** If a court finds that any provision of this Deed of Trust is not valid or should not be enforced, that fact by itself will not mean that the rest of this Deed of Trust will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Deed of Trust even if a provision of this Deed of Trust may be found to be invalid or unenforceable.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Grantor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their heirs, personal representatives, successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Homestead Waiver.** Grantor waives the benefit of Grantor's homestead exemption as to the Property described in this Deed of Trust.

**DEFINITIONS.** The following words shall have the following meanings when used in this Deed of Trust:

**Beneficiary.** The word "Beneficiary" means PNC Bank, National Association, and its successors and assigns.

**Borrower.** The word "Borrower" means CHRISTIAN E DORSEY and RACHAEL J FELDMAN and includes all co-signers and co-makers signing the Credit Agreement and all their successors and assigns.

**Credit Agreement.** The words "Credit Agreement" mean the credit agreement dated August 14, 2008, with credit limit of $133,000.00 from Grantor to Lender, together with all modifications of and renewals, replacements, and substitutions for the promissory note or agreement. The maturity date of the Credit Agreement is August 14, 2036. NOTICE TO GRANTOR:  THE CREDIT AGREEMENT CONTAINS A VARIABLE INTEREST RATE.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Grantor, Lender, and Trustee.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Deed of Trust.

**Grantor.** The word "Grantor" means CHRISTIAN E DORSEY and RACHAEL J FELDMAN.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Credit Agreement or Related Documents, together with all renewals of,

**DEED OF TRUST**
**(Continued)**

Loan No: ███████                                                        Page 10

extensions of, modifications of, consolidations of and substitutions for the Credit Agreement or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Trustee or Lender to enforce Grantor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means PNC Bank, National Association, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Credit Agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means John R. Prestwich, whose address is 1801 N. Lynn Street, Arlington, VA 22209 and any substitute or successor trustees. If more than one person is named as trustee, the word "Trustee" means each such person.

**EACH GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND EACH GRANTOR AGREES TO ITS TERMS.**

**THIS DEED OF TRUST IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS DEED OF TRUST IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

**DEED OF TRUST**
**(Continued)**

Loan No: ████████                                                    Page 11

GRANTOR:

X _____ (Seal)
CHRISTIAN E DORSEY

X _____ (Seal)
RACHAEL J FELDMAN

---

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF ___Virginia___                    )
                                           ) SS
COUNTY OF ___Fairfax___                    )

On this day before me, the undersigned Notary Public, personally appeared **CHRISTIAN E DORSEY** and **RACHAEL J FELDMAN, Husband and Wife**, to me known to be the individuals described in and who executed the Deed of Trust, and acknowledged that they signed the Deed of Trust as their free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this ___14th___ day of ___August___, 20_08_.

By_____           Residing at _____

Notary Public in and for ___Virginia___     My commission ░░░░░░░░░░░░
                                            REG. NO. 87055486
                                            NOTARY PUBLIC
                                            My registration COMMONWEALTH OF VIRGINIA
                                            MY COMMISSION EXPIRES MAY 31, 2011

---

LASER PRO Lending, Ver. 5.41.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2008. All Rights Reserved. - VA\IPA T:\CFI\LPL\G01.FC TR-13213228 PR-PMECIO

# Exhibit A

Lot 3, Block 1, of the subdivision know as "Section 1, COLUMBIA FOREST", as the same appears duly dedicated, platted and recorded in Deed Book 582, at Page 377, among the Land Records of Arlington County, Virginia, and by supplemental Deed of Dedication recorded in Deed Book 588, page 374 and by Deed of Vacation and Rededication recorded in Deed Book 604, page 464, all among the aforesaid land records.

12



Deeds Document
Received and Recorded
In the Office of the
Clerk of the Circuit Court
of Arlington County, Virginia

## File Information

Document #: 2008228121    Book / Page: 4210 / 1348    Recorded: 8/15/2008 2:44:15 PM    Clerk ID: lsmith

## Document Type

Document Type: DEED OF TRUST

## Document Information

Text Pages: 12                          Taxable Consideration:
Plat Pages: 0                           Actual Consideration: $133,000.00
Document Date:                          Assumption Balance:
Received Of: MBH                        Original Amount:
Grantor: DORSEY                         New Amount:
Tax Exempt Code: None                   County: ARLINGTON

## Fees

(038) State Grantor: $0.00              (212) Arlington Co. Tariff: $0.00
(039) State Tax: $332.50                (220) Arlington Grantor: $0.00
(145) State Library: $1.50              (214) Falls Church Tax: $0.00
(301) Clerk's Fee: $28.50               (222) Falls Church Tariff: $0.00
(106) Technology Fee: $5.00             (223) Falls Church Grantor: $0.00
(035) Open Air Preservation Fee: $0.00  (414) Arlington Co. Regional Congestion Relief Fee: $0.00
(036) Processing Fee: $10.00            (416) Falls Church Regional Congestion Relief Fee: $0.00
(213) Arlington Co. Tax: $110.83

## Total

Document Total: $488.33

Arlington County, Virginia
Clerk of the Court's Office

This certificate annexed constitutes
the Clerk's endorsement required by
sections 17-59, 17-79 and 58.1-802
of the code of Virginia.

Paul Ferguson
Clerk

**IMPORTANT:**
**DO NOT DETACH**
**THIS PAGE FROM**
**THE DOCUMENT!**

Cover Sheet Required for document processing DO NOT REMOVE



# Fidelity National Title®
### Insurance Company

November 15, 2019

Brock & Scott, PLLC                                         *VIA FED EX*
Attn: Quotes Department
1315 Westbrook Plaza Drive
Winston-Salem, NC 27103

|  |  |
|---|---|
| **Claim No.:** | **633016** |
| Policy No.: | 2741946-86326978 |
| Insured: | Wells Fargo Bank, NA |
| Borrower: | Christian E. Dorsey |
| Property: | 1009 S. Columbus Street |
|  | Arlington, VA 22204 |

Dear Sir/Madam:

Pursuant to the enclosed payoff quote, please find the enclosed check #305094302 in the amount of $116,559.93 made payable to PNC Bank, N.A. This check is to satisfy and close out the attached deed of trust encumbering 1009 S. Columbus Street, Arlington, VA. Once funds are received, please direct a signed release to my attention at the below address so I can record it.

Should you have any questions, please feel free to contact me at Alexandra.Gardner@fnf.com. Please reference the above stated claim number in all correspondence with Fidelity National Title Insurance Company.

Sincerely,

Alexandra Gardner
Claims Counsel, AVP



# BROCK &SCOTT
## PLLC

**Consumer Hotline**
844-856-6646

1315 Westbrook Plaza Drive, Suite 100, Winston-Salem, NC 27103

**Fax:**
910-765-7001

ConsumerContact@brockandscott.com
www.brockandscott.com

**This letter voids and supersedes any prior payoff letter regarding the
below referenced loan number sent by Brock and Scott, PLLC**

October 24, 2019

RE: Christian E. Dorsey and Rachael J. Feldman

| | | |
|---|---|---|
| **Re:** | **Mortgagor(s):** | **Christian E. Dorsey and Rachael J. Feldman** |
| | **Property Address:** | **1009 S Columbus St, Arlington, VA 22204** |
| | **B&S File Number:** | **19-12011** |
| | **Loan Number:** | **\*\*\*\*\*\*8705** |
| | **Creditor:** | **PNC Bank, National Association** |

Dear Sir and/or Madam:

The above-referenced account has been placed with Brock & Scott, PLLC ("B&S") for foreclosure. This correspondence is in response to your request, or an authorized request on your behalf, for information regarding the amount required to pay off your above-referenced loan, pursuant to the terms of the loan documents. This letter is not a demand for payment or money from you, and should not be interpreted or construed as demand for payment or money from you by B&S.

---

*Payoff Calculation:*
The itemized pay off below is as of the date of this letter; additional interest accrues daily *(see italicized below for detail)*:

Page 1

*File No.: 19-12011/c*

*THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. IF YOU: ARE A DEBTOR IN AN ACTIVE BANKRUPTCY CASE; ARE UNDER THE PROTECTION OF A BANKRUPTCY STAY; OR, HAVE RECEIVED A DISCHARGE IN BANKRUPTCY AND YOU HAVE NOT REAFFIRMED THE DEBT, THIS NOTICE IS FOR INFORMATIONAL PURPOSES ONLY AND SHOULD NOT BE CONSTRUED AS AN ATTEMPT TO COLLECT A DEBT FROM YOU PERSONALLY.*

| Principal: | $112,297.48 |
|---|---|
| Accrued Interest Through Today's Date: | $3,594.10 |
| Other Amounts Due: | $200.00 |
| Attorney' Fees & Costs: | $0.00 |
| Total Pay Off Amount: | $116,091.58 |
| **Total Amount to Pay Off, as of October 24, 2019; Funds received after October 24, 2019 must include an additional $16.15 in daily interest. After November 23, 2019, you are required to request a new letter, detailing the amount then incurred.** | $116,091.58 |

*Funds received after October 24, 2019, must include an additional $16.15 per diem in daily interest.*

### *Additional Information*

In addition to accrual of daily interest, the amount required to pay off your loan may be different on the date payment is received including without limitation as a result of additional: (i) advances made by the Creditor and/or its mortgage servicer; (ii) expenses incurred; (iii) legal fees and/or costs incurred relating to the foreclosure process; and/or (iv) other charges under the terms of your loan documents.

The amounts necessary to pay off your loan set forth above are subject to final verification upon receipt by the Creditor or mortgage servicer. All amounts that accrue or are incurred after the issuance of this letter will continue to be assessed until the loan is paid off in full. If the amount tendered is less than the total amount necessary to pay off on the **date your payment is received,** the Creditor and/or mortgage servicer reserves the right to reject your payment and to pursue any and all remedies available under the loan documents.

### Payment Instructions:

Remit Funds: **Wires, Certified Check, Cashier's Check or Money Order**

Payable to: **PNC Mortgage, a division of PNC Bank, N.A.**
Overnight Brock & Scott, PLLC
Address: Attn: Quotes Department
1315 Westbrook Plaza Drive
Winston-Salem, NC 27103

| Wiring Instructions | |
|---|---|
| Bank Information: | SunTrust 2006 South Hawthorne Street Winston Salem, NC 27103 |
| Account: | 1000198339612 |
| ABA/Routing: | 061000104 |
| Reference: | 19-12011 FC01 Christian and Feldman, Rachael Dorsey |

*File No.: 19-12011/c*

*Contact Information*

If you have any questions regarding this pay off quote, please contact B&S via telephone at (844) 856-6646 or via e-mail at FRBS@brockandscott.com.

Sincerely,

Brock & Scott, PLLC

*File No.: 19-12011/c*



1463430

**Deeds Document**
**Received and Recorded**
**In the Office of the**
**Clerk of the Circuit Court**
**of Arlington County, Virginia**

### File Information

Document #: 2008228121   Book / Page: 4210 / 1348   Recorded: 8/15/2008 2:44:15 PM   Clerk ID: lsmith

### Document Type

Document Type: DEED OF TRUST

### Document Information

| | | | |
|---|---|---|---|
| Text Pages: 12 | | Taxable Consideration: | |
| Plat Pages: 0 | | Actual Consideration: $133,000.00 | |
| Document Date: | | Assumption Balance: | |
| Received Of: MBH | | Original Amount: | |
| Grantor: DORSEY | | New Amount: | |
| Tax Exempt Code: None | | County: ARLINGTON | |

### Fees

(038) State Grantor: $0.00
(039) State Tax: $332.50
(145) State Library: $1.50
(301) Clerk's Fee: $28.50
(106) Technology Fee: $5.00
(035) Open Air Preservation Fee: $0.00
(036) Processing Fee: $10.00
(213) Arlington Co. Tax: $110.83

(212) Arlington Co. Tariff: $0.00
(220) Arlington Grantor: $0.00
(214) Falls Church Tax: $0.00
(222) Falls Church Tariff: $0.00
(223) Falls Church Grantor: $0.00
(414) Arlington Co. Regional Congestion Relief Fee: $0.00
(416) Falls Church Regional Congestion Relief Fee: $0.00

### Total

Document Total: $488.33

Arlington County, Virginia
Clerk of the Court's Office

This certificate annexed constitutes
the Clerk's endorsement required by
sections 17-59, 17-79 and 58.1-802
of the code of Virginia.

Paul Ferguson
Clerk

**IMPORTANT:**
**DO NOT DETACH**
**THIS PAGE FROM**
**THE DOCUMENT!**

Cover Sheet Required for document processing DO NOT REMOVE

RECORDATION REQUESTED BY:
    PNC Bank, National Association
    Consumer Loan Center
    2730 Liberty Avenue
    Pittsburgh, PA  15222

WHEN RECORDED MAIL TO:
    PNC Bank, National Association
    Consumer Loan Ctr (P5-PCLC-01-I)
    2730 Liberty Avenue
    Pittsburgh, PA  15222

SEND TAX NOTICES TO:
    CHRISTIAN E DORSEY
    RACHAEL J FELDMAN
    1009 S COLUMBUS ST
    ARLINGTON, VA  22204

Return To:
MBH Settlement Group, L.C.
4028 Fair Ridge Drive
Suite 110
Fairfax, VA 22033

TAX ID # 28030070

Tax Map Reference No(s): LOT 3 BLOCK 1
    SECTION 1 COLUMBIA FOREST
Parcel ID No(s): LOT 3 BLOCK 1 SECTION
    1 COLUMBIA FOREST

FOR RECORDER'S USE ONLY
                                        Page 1

This Deed of Trust prepared by: JASMINE MOBLEY, PNC Bank, National Association

# PNCBANK

## DEED OF TRUST

### THIS IS A CREDIT LINE DEED OF TRUST

**Maximum aggregate amount of principal
to be secured hereby at any one time: $133,000.00**

**Name and address of Noteholder secured hereby:**

**PNC Bank, National Association
Consumer Loan Center
2730 Liberty Avenue
Pittsburgh, PA  15222**

584

THIS DEED OF TRUST is dated August 14, 2008, among CHRISTIAN E DORSEY, whose address is 1009 S COLUMBUS ST, ARLINGTON, VA 22204 and RACHAEL J FELDMAN, whose address is 1009 S COLUMBUS ST, ARLINGTON, VA 22204; Husband and Wife ("Grantor"); PNC Bank, National Association, whose address is Consumer Loan Center, 2730 Liberty Avenue, Pittsburgh, PA 15222 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and JOHN R. PRESTWICH , a resident of Virginia, whose address is 1801 N. Lynn Street, Arlington, VA 22209 ("Grantee," also referred to below as "Trustee").

CONVEYANCE AND GRANT. For valuable consideration, Grantor conveys, transfers, encumbers and pledges and assigns to Trustee for the benefit of Lender as Beneficiary, all of Grantor's present and future right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; and all rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in ARLINGTON County, Commonwealth of Virginia:

See Attached Exhibit A, which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.

The Real Property or its address is commonly known as 1009 S COLUMBUS ST, ARLINGTON, VA 22204. The Real Property Tax Map Reference No(s) is/are LOT 3 BLOCK 1 SECTION 1 COLUMBIA FOREST.



**DEED OF TRUST**
(Continued)

Loan No: 13213228                                                                          Page 2

**REVOLVING LINE OF CREDIT.** This Deed of Trust secures the Indebtedness including, without limitation, a revolving line of credit, which obligates Lender to make advances to Grantor so long as Grantor complies with all the terms of the Credit Agreement. Such advances may be made, repaid, and remade from time to time, subject to the limitation that the total outstanding balance owing at any one time, not including finance charges on such balance at a fixed or variable rate or sum as provided in the Credit Agreement, any temporary overages, other charges, and any amounts expended or advanced as provided in either the Indebtedness paragraph or this paragraph, shall not exceed the Credit Limit as provided in the Credit Agreement. It is the intention of Grantor and Lender that this Deed of Trust secures the balance outstanding under the Credit Agreement from time to time from zero up to the Credit Limit as provided in the Credit Agreement and any intermediate balance. The initial advance under the terms of the Credit Agreement is to be applied toward the purchase of the Property.

**FUTURE ADVANCES.** In addition to the amounts specified in the Credit Agreement, this Deed of Trust also secures future advances.

Grantor presently, absolutely, and irrevocably assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE   (A)   PAYMENT OF THE INDEBTEDNESS AND   (B)   PERFORMANCE OF EACH OF GRANTOR'S AGREEMENTS AND OBLIGATIONS UNDER THE CREDIT AGREEMENT, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Grantor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Grantor's obligations under the Credit Agreement, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may   (1)   remain in possession and control of the Property;   (2)   use, operate or manage the Property; and   (3)   acting as Lender's agent, collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Deed of Trust, including the obligation to

**DEED OF TRUST**
**(Continued)**

Loan No: 13213228                                                   Page 3

indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are necessary to protect and preserve the Property.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due, except for the Existing Indebtedness referred to below, and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender, together with such

## DEED OF TRUST
### (Continued)

Loan No: 13213228                                                                                                        Page 4

other hazard and liability insurance as Lender may require.  Policies shall be written in form, amounts, coverages and basis acceptable to Lender and issued by a company or companies acceptable to Lender.  Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender.  Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person.  Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the maximum amount of Grantor's credit line and the full unpaid principal balance of any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.**  Grantor shall promptly notify Lender of any loss or damage to the Property.  Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty.  Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property.  If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender.  Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Deed of Trust.  Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness.  If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**LENDER'S EXPENDITURES.**  If Grantor fails  (A)  to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims,  (B)  to provide any required insurance on the Property, or  (C)  to make repairs to the Property then Lender may do so.    If any action or proceeding is commenced that would materially affect Lender's Interests in the Property, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's Interests.  All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Credit Agreement from the date incurred or paid by Lender to the date of repayment by Grantor.  All such expenses will become a part of the Indebtedness and, at Lender's option, will  (A)  be payable on demand;  (B)  be added to the balance of the Credit Agreement and be apportioned among and be payable with any installment payments to become due during either  (1)  the term of any applicable insurance policy; or  (2)  the remaining term of the Credit Agreement; or  (C)  be treated as a balloon payment which will be due and payable at the Credit Agreement's maturity.  The Property also will secure payment of these amounts.  The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default.  Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.**  The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.**  Grantor warrants generally that:  (a) Grantor holds good and marketable title to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and  (b) Grantor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.**  Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons.  In the event any action or proceeding is commenced that questions Grantor's title or the interest of Trustee or Lender under this Deed of Trust, Grantor shall defend the action at Grantor's expense.  Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.**  Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**DEED OF TRUST**
**(Continued)**

**Survival of Promises.** All promises, agreements, and statements Grantor has made in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature and shall remain in full force and effect until such time as Grantor's Indebtedness is paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Credit Agreement; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place convenient to Lender and make it available to Lender promptly following Lender's request to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will

**DEED OF TRUST**
**(Continued)**

Loan No: 13213228                                                                      Page 6

make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's
designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the
case may be, at such times and in such offices and places as Lender may deem appropriate, any
and all such mortgages, deeds of trust, security deeds, security agreements, financing statements,
continuation statements, instruments of further assurance, certificates, and other documents as
may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete,
perfect, continue, or preserve (1) Grantor's obligations under the Credit Agreement, this Deed of
Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of
Trust on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by
law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and
expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-In-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph,
Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes,
Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making,
executing, delivering, filing, recording, and doing all other things as may be necessary or desirable,
in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, terminates the credit line
account, and otherwise performs all the obligations imposed upon Grantor under this Deed of Trust,
Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver
to Grantor suitable statements of termination of any financing statement on file evidencing Lender's
security interest in the Rents and the Personal Property. Any reconveyance fee required by law shall be
paid by Grantor, if permitted by applicable law.

**EVENTS OF DEFAULT.** Grantor will be in default under this Deed of Trust if any of the following
happen: (A) Grantor commits fraud or makes a material misrepresentation at any time in connection
with the Credit Agreement. This can include, for example, a false statement about Grantor's income,
assets, liabilities, or any other aspects of Grantor's financial condition. (B) Grantor does not meet the
repayment terms of the Credit Agreement. (C) Grantor's action or inaction adversely affects the
collateral or Lender's rights in the collateral. This can include, for example, failure to maintain required
insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on
the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without
Lender's permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for
prohibited purposes.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any
time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised
alone or together. An election by Lender to choose any one remedy will not bar Lender from using
any other remedy. If Lender decides to spend money or to perform any of Grantor's obligations
under this Deed of Trust, after Grantor's failure to do so, that decision by Lender will not affect
Lender's right to declare Grantor in default and to exercise Lender's remedies.

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to
declare the entire Indebtedness immediately due and payable. This right is in addition to all other
rights given to holders of promissory notes under Title 55 of the Code of Virginia.

**Foreclosure.** With respect to all or any part of the Real Property, the Trustee shall have the right to
foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in
either case in accordance with and to the full extent provided by applicable law. Grantor expressly
waives and releases any requirement or obligation that Lender or Trustee present evidence or
otherwise proceed before any court or other judicial or quasi-judicial body as a precondition to or
otherwise incident to the exercise of the powers of sale authorized by this Credit Line Deed of
Trust. The proceeds of sale shall be applied by Trustee as follows: (a) first, to pay all proper
advertising expenses, auctioneer's allowance, the expenses, if any, required to correct any
irregularity in the title, premium for Trustee's bond, auditor's fee, attorneys' fees, and all other
expenses of sale incurred in or about the protection and execution of this Deed of Trust, and all
moneys advanced for taxes, assessments, insurance, and with interest thereon at the rate provided
in the Credit Agreement, and all taxes and assessments due upon the Property at time of sale, and
to retain as compensation a reasonable Trustee's commission; (b) second, to pay the whole
amount then remaining unpaid on the Indebtedness; (c) third, to pay liens of record against the
Property according to their priority of lien and to the extent that funds remaining in Trustee's hands
are available; and (d) last, to pay the remainder of the proceeds, if any, to Grantor, Grantor's heirs,
personal representatives, successors or assigns upon the delivery and surrender to the purchaser of
possession of the Property, less costs and expenses of obtaining possession.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the

**DEED OF TRUST**
(Continued)

Loan No: 13213228                                                              Page 7

rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Credit Agreement or available at law or in equity.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least fourteen (14) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Credit Agreement rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, a reasonable Trustee's commission and reasonable attorney fees incurred by the Trustee in performing its duties under the Deed of Trust, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee (and each of them if more than one) shall have the power to take the following actions with respect to the Property upon the written request of Lender and Grantor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**DEED OF TRUST**
**(Continued)**

Loan No: 13213228                                                                 Page 8

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Grantor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender will have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, at any time hereafter and without prior notice and without specifying any reason, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office in the jurisdiction where this Deed of Trust has been recorded. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Grantor, the book and page where this Deed of Trust is recorded, and the name of the successor trustee and the county, city or town in which he or she resides, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**Power to Act Separately.** If more than one Trustee is named in this Deed of Trust, any Trustee may act alone, without the joinder of any other Trustee, to exercise any or all the powers given to the Trustees collectively in this Deed of Trust or by applicable law.

**NOTICES.** Any notice required to be given under this Deed of Trust, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, if hand delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any person may change his or her address for notices under this Deed of Trust by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors. It will be Grantor's responsibility to tell the others of the notice from Lender.

**COMPLIANCE WITH ALL LAWS.** Grantor shall comply with all laws respecting ownership or use of the Property. If the Property is a condominium or planned unit development, Grantor shall comply with all by-laws, regulations and restrictions of record.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** What is written in this Deed of Trust and in the Related Documents is Grantor's entire agreement with Lender concerning the matters covered by this Deed of Trust. To be effective, any change or amendment to this Deed of Trust must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Joint and Several Liability.** All obligations of Grantor under this Deed of Trust shall be joint and several, and all references to Grantor shall mean each and every Grantor. This means that each Grantor signing below is responsible for all obligations in this Deed of Trust.

**No Waiver by Lender.** Grantor understands Lender will not give up any of Lender's rights under this Deed of Trust unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Grantor will not have to comply with the other provisions of this Deed of Trust. Grantor also understands that if Lender does consent to a request, that does not mean that Grantor will not have to get Lender's consent again if the situation happens again. Grantor further understands that just because Lender consents to one or more of

**DEED OF TRUST**
**(Continued)**

Loan No: 13213228                                                        Page 9

Grantor's requests, that does not mean Lender will be required to consent to any of Grantor's future requests.   Grantor waives presentment, demand for payment, protest, and notice of dishonor.

**Severability.**  If a court finds that any provision of this Deed of Trust is not valid or should not be enforced, that fact by itself will not mean that the rest of this Deed of Trust will not be valid or enforced.  Therefore, a court will enforce the rest of the provisions of this Deed of Trust even if a provision of this Deed of Trust may be found to be invalid or unenforceable.

**Successors and Assigns.**  Subject to any limitations stated in this Deed of Trust on transfer of Grantor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their heirs, personal representatives, successors and assigns.   If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Deed of Trust and the indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Deed of Trust or liability under the indebtedness.

**Time is of the Essence.**  Time is of the essence in the performance of this Deed of Trust.

**Homestead Waiver.**  Grantor waives the benefit of Grantor's homestead exemption as to the Property described in this Deed of Trust.

**DEFINITIONS.**  The following words shall have the following meanings when used in this Deed of Trust:

**Beneficiary.**  The word "Beneficiary" means PNC Bank, National Association, and its successors and assigns.

**Borrower.**  The word "Borrower" means CHRISTIAN E DORSEY and RACHAEL J FELDMAN and includes all co-signers and co-makers signing the Credit Agreement and all their successors and assigns.

**Credit Agreement.**  The words "Credit Agreement" mean the credit agreement dated August 14, 2020, with credit limit of $133,000.00 from Grantor to Lender, together with all modifications of and renewals, replacements, and substitutions for the promissory note or agreement.  The maturity date of the Credit Agreement is August 14, 2035. NOTICE TO GRANTOR:  THE CREDIT AGREEMENT CONTAINS A VARIABLE INTEREST RATE.

**Deed of Trust.**  The words "Deed of Trust" mean this Deed of Trust among Grantor, Lender, and Trustee.

**Environmental Laws.**  The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.**  The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Existing Indebtedness.**  The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Deed of Trust.

**Grantor.**  The word "Grantor" means CHRISTIAN E DORSEY and RACHAEL J FELDMAN.

**Hazardous Substances.**  The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled.  The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws.  The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.**  The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.**  The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Credit Agreement or Related Documents, together with all renewals of,

**DEED OF TRUST**
(Continued)

Loan No: 13213228                                                                  Page 10

---

extensions of, modifications of, consolidations of and substitutions for the Credit Agreement or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Trustee or Lender to enforce Grantor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means PNC Bank, National Association, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Credit Agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means John R. Prestwich, whose address is 1801 N. Lynn Street, Arlington, VA  22209 and any substitute or successor trustees.  If more than one person is named as trustee, the word "Trustee" means each such person.

EACH GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND EACH GRANTOR AGREES TO ITS TERMS.

THIS DEED OF TRUST IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS DEED OF TRUST IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

Loan No: 13213228

**DEED OF TRUST**
**(Continued)**

Page 11

**GRANTOR:**

X _____ (Seal)
CHRISTIAN E DORSEY

X _____ (Seal)
RACHAEL J FELDMAN

---

### INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Virginia_ )
                                      ) SS
COUNTY OF _Fairfax_ )

On this day before me, the undersigned Notary Public, personally appeared **CHRISTIAN E DORSEY** and **RACHAEL J FELDMAN, Husband and Wife,** to me known to be the individuals described in and who executed the Deed of Trust, and acknowledged that they signed the Deed of Trust as their free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this _14th_ day of _August_, 20_08_.

By _____                    Residing at _____

Notary Public in and for _Virginia_            My commission _BRAD GELLMAN_
                                                                       REG. NO. #7055455
My registration number is _____    NOTARY PUBLIC
                                                                       COMMONWEALTH OF VIRGINIA
                                                                       MY COMMISSION EXPIRES MAY 31, 2011

---

LASER PRO Lending, Ver. 5.41.00.004  Copr. Harland Financial Solutions, Inc. 1997, 2008.  All
Rights Reserved.  - VA/PA T:\CFI\LPL\G01.FC  TR-13213228  PR-PMECIO

### Exhibit A

Lot 3, Block 1, of the subdivision know as "Section 1, COLUMBIA FOREST", as the same appears duly dedicated, platted and recorded in Deed Book 582, at Page 377, among the Land Records of Arlington County, Virginia, and by supplemental Deed of Dedication recorded in Deed Book 588, page 374 and by Deed of Vacation and Rededication recorded in Deed Book 604, page 464, all among the aforesaid land records.

305094302

**FIDELITY NATIONAL TITLE INS CO**

| Line | Date | Invoice Number | Description | Amount | Discount | Net Amount |
|------|------|----------------|-------------|--------|----------|------------|
| 1 | 11/14/19 | TR1283477;663016 | 663016 - TR1283477 | $116,559.93 | $0.00 | $116,559.93 |
| | | | Total | $116,559.93 | $0.00 | $116,559.93 |

THIARP-PPPPSCRL

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER • THERMOCHROMIC INK ON BACK

FIDELITY NATIONAL TITLE INS CO
601 RIVERSIDE AVENUE BLDG 5 6TH FLOOR
JACKSONVILLE, FL 32204
(866)993-5512

Harris Trust and Savings
Bank
Rosella, IL

305094302

70-1668/719

| Date | Amount |
|------|--------|
| 11/14/19 | $116,559.93 |

**One Hundred Sixteen Thousand Five Hundred Fifty-Nine Dollars And Ninety-Three Cents***********************************

Pay to the
Order of:

PNC BANK NA
300 FIFTH AVENUE
PITTSBURGH, PA 15222

⑂05094302⑂ ⑈071915580⑈ 04258080⑈



**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.



NEOPOST
11/12/2020
US POSTAGE $000.50⁰

ZIP 22314
041M11467888

NOVA 220
12 NOV 2020 PM 4 L

Fidelity National Title Insurance
Company
c/o Staci Ulrich
2533 N. 117th Ave.
Omaha, NE 68164-3679

68164-367933

OFFICE OF CHAPTER 13 TRUSTEE
300 NORTH WASHINGTON STREET
SUITE 400
ALEXANDRIA, VIRGINIA 22314

## UNITED STATES BANKRUPTCY COURT

### FOR THE

### EASTERN DISTRICT OF VIRGINIA
#### Alexandria Division

In the Matter of:

CHRISTIAN E. DORSEY

Debtor

Chapter 13

Case No. 19-13402-BFK

---

### MOTION TO DISMISS WITH PREJUDICE,
### NOTICE OF MOTION TO DISMISS WITH PREJUDICE
### AND
### NOTICE OF SCHEDULED HEARING ON THIS MOTION

Thomas P. Gorman, Trustee, moves pursuant to 11 U.S.C. §1307 and §1330(a) for revocation of the October 20, 2020 confirmation of Debtor's Plan and also for dismissal of this case with prejudice, and states as cause therefore the following:

1. This case was commenced by the filing of a Chapter 13 Petition on October 16, 2019.
2. Debtor filed Schedules, including Schedules I/J and Form 122C, at the same time he filed the Petition.
3. In those Schedules Debtor listed a $1,096.00/mo. deduction at Line 5 of Schedule J (Dkt. #1, pg. 37) and also at Line 9b of Form 122C-2 (Dkt. #1, pg. 51). [1]
4. Upon information and belief, that $1,096.00/mo. deduction was attributable to a second trust mortgage obligation.
5. Debtor has since filed three (3) Amended Schedule J's, all of which have contained the same $1,096.00/mo. deduction for Debtor's second trust mortgage obligation.[2] The most recent representation of the six affirmative representations[3] that he had an ongoing $1,096.00/mo. second trust payment obligation was just made on September 17, 2020.
6. The most recent such Plan filed September 17, 2020 was confirmed by Order entered October 20, 2020 (Dkt. #68) and provides for an estimated 30% distribution to unsecured creditors.

---

[1] Debtor amended Form 122C on March 26, 2020 (Dkt #40), which amendment also included the $1,096.00/mo. deduction.
[2] Dkt. #19, pg. 9; Dkt. #39, pg. 9; Dkt. #63, pg. 9)
[3] Two Form 122C's and four Schedule J's.

**Notice and Motion to Dismiss**
Christian E. Dorsey, Case #19-13402-BFK

7. Debtor's Plans and budgets have all been based on his affirmative representations that his disposable income should be reduced by that $1,096.00/mo. second trust mortgage payment.

8. It now turns out that the second trust was forgiven and released prior to the filing of the Petition and that Debtor has never made a single payment on it since filing this case.

9. Debtor had no good faith basis for deducting this expense on the four Schedule J's he filed with the Court.

10. At the time Debtor filed each of his four Schedule J's in this case he knew he would not be making the $1,096.00/mo. payment on the second trust is in the future.

11. But for his improper deduction of this expense on his two Form 122C and his four Schedule J's, Debtor's Plan payment would have been required to be $1,096.00/mo. more that he is presently paying.

12. Unsecured creditors have been directly prejudiced by Debtor's affirmative misrepresentation of his financial obligations.

13. Cause exists under 11 U.S.C. §1330(a) to revoke the confirmation Order entered October 20, 2020 as it was procured by fraud.

14. Debtor's conduct and lack of veracity also warrant dismissal of this case with prejudice.

WHEREFORE Trustee prays that the confirmation order entered October 20, 2020 be revoked and that this case be dismissed with prejudice for a period of not less than two (2) years, and for such other and further relief as the Court deems appropriate.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not wish the court to grant the relief sought in the motion, or if you want the court to consider your views on the motion, then on or before five business days prior to the hearing date, you or your attorney must:

File with the court a written response with supporting memorandum as required by Local Bankruptcy Rule 9013-1(H). Unless a written response and supporting memorandum are filed and served by the date specified, the Court may deem any opposition waived, treat the motion as conceded, and issue an order granting the requested relief without further notice or hearing. If you mail your response to the court for filing, you must mail it early enough so the court will receive it on or before five business days prior to the scheduled hearing. You must mail a copy to the persons listed below.

**Notice and Motion to Dismiss**
Christian E. Dorsey, Case #19-13402-BFK

*Attend the hearing to be held on December 3, 2020 at 1:30 p.m. in Courtroom #1 on the 2nd floor, United States Bankruptcy Court, 200 South Washington Street, Alexandria, VA 22314.*[4] If no timely response has been filed opposing the relief requested, the court may grant the relief without holding a hearing.

A copy of any written response must be mailed to the following persons:

> Thomas P. Gorman
> 300 North Washington Street, Ste. 400
> Alexandria, VA 22314

> Clerk of the Court
> United States Bankruptcy Court
> 200 South Washington Street
> Alexandria, VA 22314

If you or your attorney do not take steps, the court may decide that you do not oppose the relief sought in the motion and may enter an order granting that relief.

Date: __November 12, 2020_____          __/s/ Thomas P. Gorman_____
                                          Thomas P. Gorman
                                          Chapter 13 Trustee
                                          300 N. Washington Street, #400
                                          Alexandria, VA 22314
                                          (703) 836-2226
                                          VSB 26421

### CERTIFICATE OF SERVICE

I hereby certify that I have this 12th day of November, 2020, served via ECF to authorized users or mailed a true copy of the foregoing Motion to Dismiss with Prejudice, Notice of Motion and Notice of Hearing to the following parties.

Christian E. Dorsey                Tommy Andrews, Jr., Esq.
Chapter 13 Debtor                  Attorney for Debtor
1009 S. Columbus St.               122 N. Alfred St.
Arlington, VA 22204                Alexandria, VA 22314

and to all Creditors and Parties of interests on the attached Matrix.
                                   ___/s/ Thomas P. Gorman_____
                                   Thomas P. Gorman

---

[4] Pursuant to the Bankruptcy Court's Protocol in response to COVID-19 Public Health Emergency, parties appearing for hearings shall appear telephonically at the hearing through the Court's CourtSolutions program http://www.court-solutions.com.

Label Matrix for local noticing
0422-1
Case 19-13402-BFK
Eastern District of Virginia
Alexandria
Tue Nov 10 10:38:38 EST 2020

Capital One Auto Finance, a division of Capi
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118-7901

(p)PNC BANK RETAIL LENDING
P O BOX 94982
CLEVELAND OH 44101-4982

SPECIALIZED LOAN SERVICING LLC
8742 Lucent Blvd, Suite 300
Highlands Ranch, CO 80129-2386

Specialized Loan Servicing LLC
14841 DALLAS PKWY SUITE 425
Dallas, TX 75254-8067

Specialized Loan Servicing, LLC
SHAPIRO & BROWN, LLP
501 Independence Parkway, Suite 203
Chesapeake, VA 23320-5174

United States Bankruptcy Court
200 South Washington Street
Alexandria, VA 22314-5405

AT&T Universal Citi Card
Attn: Bankruptcy
Po Box 790034
St Louis, MO 63179-0034

American Express National Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern PA 19355-0701

Amex
Correspondence/Bankruptcy
Po Box 981540
El Paso, TX 79998-1540

Arlington County Treasurer
2100 Clarendon Blvd, Ste 217
Arlington, VA 22201-5447

Brock & Scott
484 Viking Dr, Ste 203
Virginia Beach, VA 23452-7321

Capital One Auto Finance
Attn: Bankruptcy
Po Box 30285
Salt Lake City, UT 84130-0285

Capital One Auto Finance, a division of
AIS Portfolio Services, LP
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118-7901

(p)JPMORGAN CHASE BANK  N A
BANKRUPTCY MAIL INTAKE TEAM
700 KANSAS LANE FLOOR 01
MONROE LA 71203-4774

ChexSystems
Attn: Consumer Relations
7805 Hudson Rd., Suite 100
Saint Paul, MN 55125-1703

Costco Anywhere Visa Card
Attn: Bankruptcy
Po Box 6500
Sioux Falls, SD 57117-6500

Early Warning Services
16552 N 90th St.
Scottsdale, AZ 85260-1619

Equifax Check Services
PO Box 30272
Tampa, FL 33630-3272

Experian
475 Anton Blvd
Costa Mesa, CA 92626-7037

Fidelity National Title Insurance Company
c/o Staci Ulrich
2533 N. 117th Ave.
Omaha, NE 68164-3679

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Internal Revenue Service
PO Box 621504
Atlanta, GA 30362-3004

Internal Revenue Service - VA
Centralized Insolvency
P.O. Box 7346
Philadelphia, PA 19101-7346

JPMorgan Chase Bank, N.A.
s/b/m/t Chase Bank USA, N.A.
c/o National Bankruptcy Services, LLC
P.O. Box 9013
Addison, Texas 75001-9013

(p)JEFFERSON CAPITAL SYSTEMS LLC
PO BOX 7999
SAINT CLOUD MN 56302-7999

LVNV Funding, LLC
Resurgent Capital Services
PO Box 10587
Greenville, SC 29603-0587

Specialized Loan Servicing LLC
6200 S. Quebec Street
Greenwood Village, CO 80111-4720

Synchrony Bank/Amazon
Attn: Bankruptcy
Po Box 965060
Orlando, FL 32896-5060

TD Bank USA, N.A.
C O WEINSTEIN & RILEY, PS
2001 WESTERN AVENUE, STE 400
SEATTLE, WA 98121-3132

Target
Attn: Bankruptcy
Po Box 9475
Minneapolis, MN 55440-9475

(p)TELECHECK SERVICES INC
P O BOX 6806
HAGERSTOWN MD 21741-6806

TransUnion
P.O. Box 2000
Chester, PA 19016-2000

United Bank
500 Virginia St E
Charleston, WV 25301-2199

Virginia Department of Taxatio
PO Box 2156
Richmond, VA 23218-2156

Christian E. Dorsey
1009 S. Columbus St.
Arlington, VA 22204-3423

John P. Fitzgerald, III
Office of the U.S. Trustee - Region 4
1725 Duke Street
Suite 650
Alexandria, VA 22314-3489

Thomas P. Gorman
341 Dial 866-630-6853 Code: 6786636
300 N. Washington St. Ste. 400
Alexandria, VA 22314-2550

Tommy Andrews Jr.
Tommy Andrews, Jr. P.C.
122 North Alfred St.
Alexandria, VA 22314-3011

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

PNC Bank, N.A.
PNC Mortgage, a division of PNC Bank, N.
3232 Newmark Drive
Miamisburg, OH 45342

Chase Card Services
Attn: Bankruptcy
Po Box 15298
Wilmington, DE 19850-0000

Jefferson Capital Systems LLC
Po Box 7999
Saint Cloud Mn 56302-9617

(d)Pnc Mortgage
Attn: Bankruptcy
3232 Newmark Drive
Miamisburg, OH 45342-0000

Telecheck Services, Inc.
5251 Westheimer
Houston, TX 77056-0000

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(d)Capital One Auto Finance, a division of Ca
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118-7901

(d)Specialized Loan Servicing LLC
14841 Dallas Pkwy Suite 425
Dallas, TX 75254-8067

(d)Capital One Auto Finance, a division of Ca
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118-7901

(d)United Bank
500 Virginia St E
Charleston, WV 25301-2199

End of Label Matrix
Mailable recipients    38
Bypassed recipients     4
Total                  42



xpre

ORIGIN ID:OMAA       (904) 513-6386
ELISABETH BLOMSTEDT
FIDELITY NATIONAL FINANCIAL
2533 NORTH 117TH AVENUE

OMAHA, NE 68164
UNITED STATES US

SHIP DATE: 19NOV20
ACTWGT: 1.00 LB
CAD: 112445491/INET4280

BILL SENDER

TO  CLERK OF COURT
    UNITED STATES BANKRUPTCY COURT
    200 SOUTH WASHINGTON STREET

    ALEXANDRIA VA 22314
                    REF: 663016
    (111) 111-1111
    INV:                    DEPT:
    PO:



**FedEx**
Express

FRI - 20 NOV 10:30A
PRIORITY OVERNIGHT

TRK# 7721 3182 0151
0201

XC NDVA

22314
VA-US   IAD



RT **363**
FZ